## ELIJAH RAYL v. J. A. RAYL.

### No. 10293.

1. RESULTING TRUST — *as to lands, expressly excepted from Statute of Trusts requiring writing.* The provision of the statute prohibiting the creation of trusts concerning lands, unless in writing, expressly excepts those arising by implication of law, and recognizes the existence and enforceability of such trusts where it is made to appear that, by agreement and without any fraudulent intent, the party in whom the title is vested was to hold the land in trust for the party paying the purchase money.

2. ——— *not within Statute of Frauds as to agreements not to be performed within a year.* That clause of the sixth section of the Statute of Frauds which prohibits the bringing of an action upon an agreement not to be performed within one year from the making thereof, unless the agreement is in writing, has no application to an action to enforce a trust resulting by implication of law.

3. ——— *held established by particular facts.* Defendant took the title to two quarter-sections of land under an agreement with his mother that she should pay the purchase price of one quarter-section, and he and his brother should pay the balance, and that he should convey one quarter-section of the land to her. A part of the first payment was paid by each of the parties. The balance of the payments for both quarters was derived mainly from the earnings of the parties and the products of the land. The plaintiff, her husband, and her children, other than the defendant, contributed their labor in carrying on the farm, raising and marketing crops, feeding and caring for the live stock. The plaintiff contributed more than enough to fully pay for the quarter-section that it was agreed should be hers. She occupied it from the time the agreement was made until the trial of the action, and her right to do so was never disputed by any of the parties. *Held*, that under these facts an enforceable trust resulted in her favor, and a decree directing the son to convey to her will not be disturbed.

Error from Reno District Court. Hon. F. L. Martin, Judge. Opinion filed October 9, 1897. *Affirmed.*

*Houk & Whitelaw*, for plaintiff in error.

*H. M. Whiteside*, for defendant in error.

ALLEN, J. The parties to this action are Mrs. J. A.
Rayl, plaintiff below, and her son, Elijah Rayl.
The plaintiff claimed that she was the owner of a cer-
tain quarter-section of land in Reno County, on which
she resided with her family, the title to one half of
which was vested in the defendant; and that she was
entitled to a conveyance from him, which he refused to
execute. The defendant denied her right to a con-
veyance, though he conceded her right to the posses-
sion and use of the land during her life. The
testimony in the case is very voluminous, yet the es-
sential facts are not complicated; although there is
much conflict between the statements of Elijah and
those of the witnesses for the plaintiff. The court
found in favor of the plaintiff, and entered a decree
for a conveyance. The defendant asks a reversal of
the judgment.

Briefly stated, the essential facts shown by the
plaintiff's testimony are, that a half section of land
had been taken possession of by the husband of Mrs.
Rayl, under a contract of purchase from the Atchison,
Topeka & Santa Fe Railroad Company, on which one
payment had been made. Mr. Rayl was addicted to
the excessive use of intoxicating liquors, and some-
times squandered his money. Default having been
made in the subsequent payments, the railroad com-
pany claimed a forfeiture of the land, and afterwards
sold and conveyed it to one Fahnistock. Mr. and
Mrs. Rayl, by agreement, made a division of the prop-
erty they had. An arrangement was then made for
the purchase of the half section of land from Fahn-
istock, for a little over two thousand dollars. The
agreement as claimed by the plaintiff was, that the
land should be purchased from Fahnistock, and a
deed taken in the name of Elijah, to be held by him

for the benefit of his mother, himself, and his brother
Levi, who was a minor ; that Elijah and Levi were to
manage the farm as partners ; that the plaintiff and
her minor children should aid in carrying on and pay-
ing for the farm, and that, at the expiration of five
years, Elijah should convey the northeast quarter to
Mrs. Rayl, and a half of the northwest quarter to Levi.
Under the arrangement made, the land was bought
and deeded to Elijah. Fifteen hundred dollars of the
purchase money was obtained through a loan secured
by mortgage on the land, and the balance, concern-
ing the exact amount of which the evidence is some-
what conflicting, but which was something over five
hundred dollars, was paid partly by Elijah, and
partly by Mrs. Rayl. This arrangement was made in
1883. All parties to the arrangement worked very
earnestly and successfully, and paid for and improved
the farm. Large orchards and vineyards were planted
on each quarter-section, which proved very profitable
in the course of a few years. Much profit was de-
rived from market gardening as well as from or-
dinary farm crops and stock. The business was
transacted in the name of Rayl Brothers. After-
wards, two farms on the other side of the river, con-
taining nearly four hundred acres, were bought.
When the fifteen-hundred dollar mortgage became
due, Elijah conveyed a half interest in the original
half section to Levi, and they thereupon made a loan
of twenty-three hundred dollars, for the purpose of
taking up the old mortgage and one of eight hundred
dollars on land south of the river. It appears, with-
out dispute, that Mrs. Rayl and her daughter Jane at-
tended to the housework ; that all the family and
the farm hands boarded together with her ; that Mr.
Rayl, except a very brief time while he was absent,
stayed at home, and worked more or less about the

farm; that Thomas Rayl, a minor, and an adopted boy, also worked in raising crops on lands south of the river as well as on the home place. Mrs. Rayl was a weaver, and earned some money by weaving carpets. She also kept boarders, from whom she received $150 at one time. It is shown that, from the proceeds of her work, of the stock she owned at the time of the original arrangement, its increase, and other stock purchased by her, and of the crops on the quarter-section of land in controversy, which was always treated as her property, much more than the purchase price of the quarter-section was realized and paid to Elijah and Levi, who used it in their business.

It is now contended that the plaintiff's claim in the action is for the enforcement of the terms of an express trust, which the statute concerning trusts (Gen. Stat. 1889, ¶ 7159) requires to be in writing; that

1. Resulting trust as to land excepted from statute.

this agreement, whatever it was, was entirely in parol, and therefore not enforceable. It is urged that the arrangement was fraudulent as to Mr. Rayl, the husband, because one of the avowed objects in placing the title in Elijah was to prevent the husband from having any interest in, or control over, any part of the land. It is also urged that the agreement is void under the Statute of Frauds, because it was not to be performed within one year. There is no force in the contention that the arrangement was fraudulent. It abundantly appears that there was no purpose on Mrs. Rayl's part to wrong her husband in any particular. On the contrary, the sole object was to protect him, as well as the balance of the family, from the effects of his own weakness, and liability to give way to his appetite and squander his money. It must be conceded that the original parol agreement of itself is insufficient to support the plaintiff's action. It appears, however,

that in this case the plaintiff has paid for the land she claims. The court finds that she has much more than paid for it; but, as she waived any claim for the surplus, under the accounting demanded by the petition, no judgment was rendered in her favor for the balance. She was in possession of the land at the time it was conveyed to Elijah, and has remained in possession ever since. No one has ever questioned her right there, nor does Elijah now question her right to occupy the land during her life. Under these circumstances, it seems clear that the case falls within the last clause of section 8 (Gen. Stat. 1889, ¶ 7166) of the Act Concerning Trusts and Powers, and that this is a trust arising by implication of law, in a case "where it shall be made to appear that, by agreement, and without any fraudulent intent, the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land, or some interest therein, in trust for the party paying the purchase money, or some part thereof."

In this case the consideration was paid by the plaintiff. The title was taken in the name of Elijah, to hold for her benefit, without any fraudulent purpose whatever. Levi, the other son, recognized his mother's right, and promptly conveyed to her the half interest transferred to him by Elijah. The court justly required Elijah to convey the other half. *Franklin v. Colley*, 10 Kan. 260; *Fink v. Umscheid*, 40 id. 271; *Barlow v. Barlow*, 47 id. 676.

Nor is there any merit in the contention that the agreement is void under the Statute of Frauds because not to be performed within one year. The action is not one to enforce specific performance of the original parol agreement, but rather to enforce the trust which resulted, by operation of law, from the original agreement and the continuing acts of performance;

2, 3. Resulting trust not within Statute of Frauds — trust held established.

the continued recognition of the trust by the trustee, evidenced by the occupancy of the land by the plaintiff; the recognition of her right to the fruits of it; the reception from her of the means with which the land was paid for, and the various declarations of the defendant recognizing the trust. To such a case the clause of the Statute of Frauds relied on has no application. The conclusion reached by the trial court appears eminently just and equitable.

The clerical error in the description of the land as written in the petition is not a ground for reversal of the case. There was but one tract of land in controversy, and no error was committed by inserting the proper description in the decree.

The judgment is affirmed.