ARCH PIPER, *as Guardian, etc.,* V. JOHN F. PIPER *et al.*

No. 15,511.   (95 Pac. 1051.)

SYLLABUS BY THE COURT.

RESULTING TRUST — *Evidence* — *Parol* — *Circumstantial.* .Facts from which a trust by implication of law arises may be established by parol evidence or by proof partly in parol and partly in writing; and, where the claim is that the purchase of land was made by and for the benefit of several and the conveyance taken in the name of only one, any writing prepared at the time, as well as the negotiations of the parties, their acts and conduct, and all the circumstances in connection with the transaction tending to prove a trust, may be shown in evidence.

Error from Labette district court; THOMAS J. FLANNELLY, judge. Opinion filed May 9, 1908. Reversed.

*Archie D. Neale,* for plaintiff in error.

*Glasse & Burton,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: In a suit brought by Arch Piper, as guardian for Priscilla J. Lanham, a person of unsound mind, against John F. Piper and Angeline Summers, he alleged that Mrs. Lanham was the owner of an undivided one-fourth interest in a half-section of land formerly owned by John F. Piper, sr., father of Mrs. Lanham and the defendants. In one count he asked for the possession of the land, for $500 as damages for being kept out of possession, and for rents and profits. In another count the plaintiff stated the way in which his ward derived her interest in the land, alleging in sub-

stance that in 1897, John F. Piper, sr., having died, George Bennett, the administrator of the Piper estate, was about to sell the land under the direction of the probate court; that an agreement was made between the heirs of John F. Piper, sr., that the land should be purchased for their benefit and the title thereto taken in the name of defendant John F. Piper; that to obtain the money with which to purchase the land the heirs procured a loan, for which they gave a note, and to secure its payment a mortgage upon the land was also executed; that it was agreed that if the rents and profits were insufficient to pay the interest on the mortgage each heir should share in paying the deficiency, and that if any one of them failed to pay his *pro rata* share his interest should cease and become the property of the remaining purchasers. It was alleged to have been the understanding that all of the heirs were to be included in the transaction, and that a written agreement was prepared and signed by some of the parties, but plaintiff was unable to state whether all in fact did sign it, as the writing was taken and retained by defendant Piper. What purported to be a copy of the agreement, so far as it was executed, was set forth, but it appeared not to be signed by the defendant Piper or by several others of the heirs. It was further alleged that one of the heirs lost her interest by failing to pay a share of the charges against the land, and that another had assigned her interest to defendant Piper. The plaintiff asked the court to determine the respective interests of the parties in the land and make a partition among them.

In his answer, aside from other averments and defenses, John F. Piper admitted the purchase of the land from the administrator, and also that there had been negotiations looking to the purchase of the land and the holding of the same for the benefit of all of the heirs, but he alleged that the agreement was never consummated, as all of the heirs did not enter into the contract.

He also alleged that, while the plaintiff had made some payments toward the excess of the charges over the rents and profits of the land, they were received with the understanding that the contract would be completed, which was never done; that plaintiff had failed to pay other and later deficiencies; and that he (Piper) was ready and willing to return the money received from plaintiff under the proposed agreement. On the trial of the issues the verdict was against the plaintiff, and he complains mainly of rulings on the admission of testimony.

The plaintiff offered proof of conversations between some of the heirs and John F. Piper as to the purchase of the land, the placing of the title in the name of piper, and his holding the land in trust for the heirs. Plaintiff also offered proof of admissions by Piper that he had taken, and was holding, the land in trust for the others. Testimony was excluded which tended to show that when Piper and another applied for the loan with which to buy the land it was then stated that the land was to be conveyed to Piper, who was to hold it for the benefit of the heirs, and that the party from whom the money was obtained insisted that all of the parties interested in the land should sign the note and coupons. The record discloses that most of the heirs did sign the note and coupons given to obtain the purchase-price of the land. The testimony tended to show a resulting trust, and should have been admitted. While it is required that trusts concerning lands shall be in writing, signed by the party creating the same, an exception is made as to those arising by implication of law. (Gen. Stat. 1901, § 7875.) If by agreement and without fraudulent purpose the plaintiff's ward and other heirs paid the consideration of the purchase, or of certain interests in the land, and vested the title in Piper, who was to hold the land for their use and benefit, a trust resulted by operation of law in their favor, and the fact that some of the agreements and elements of the trust are not in writing does not prevent its enforcement.

(*Franklin v. Colley,* 10 Kan. 260; *Fink v. Umscheid,* 40 Kan. 271, 19 Pac. 623, 2 L. R. A. 146; *Barlow v. Barlow,* 47 Kan. 676, 28 Pac. 607; *Rayl v. Rayl,* 58 Kan. 585, 50 Pac. 501; *Lyons v. Berlau,* 67 Kan. 426, 73 Pac. 52; *Reemsnyder v. Reemsnyder,* 75 Kan. 565, 89 Pac. 1014; Gen. Stat. 1901, § 7882.)

Every agreement and circumstance tending to show that Piper was acting as trustee and holding the land for the heirs, or some of them, was competent. The trust relation may be founded partly on writings and partly on oral agreements, as well as in the conduct of the parties and the circumstances in connection with the matter. So testimony of the signing of the note and coupons upon which the money to buy the land was borrowed, and also the writing acknowledging the receipt of money for the purchase of an interest of one of the heirs, was admissible. Testimony, too, of the admissions of Piper, whether oral or in writing, that he was acting in the capacity of a trustee should have been received. Any act of his in recognition of the trust, while holding the land, such as the receipt of money from the plaintiff and others in payment of a proportionate share of the charges upon the land where they exceeded the rents and profits derived from it, as well as his purchase of the interests acquired by some of the heirs under the trust agreement, would tend to establish the trust, and was therefore admissible. Some testimony of that character was admitted, but much that was material and competent was excluded. An objection to some of the testimony excluded was that the witness occupied the privileged relation of attorney, but the ruling of the trial court was not placed on that ground. Later in the trial some testimony, similar to that excluded, appears to have been received, but not in such a way or to such an extent as to cure the error that had been committed.

It is argued that plaintiff based his right of recovery upon a written agreement, and for that reason defendant Piper's admissions and the conversations that

were had outside of that writing were not competent testimony. Plaintiff did set forth a purported writing, signed by some of the heirs but not by John F. Piper, which upon its face appeared to be incomplete. There was an averment, too, that plaintiff was unable to state whether all of the parties had signed it, as the writing had been taken and retained by Piper, but that the terms written in it had been fully accepted and agreed upon by all of the parties. The signing of this paper by plaintiff did not preclude proof of all of the circumstances, including the writing itself, which tended to show a trust in the land, and the evidence offered did not contradict the terms embodied in the writing. If the transaction had the elements of a resulting trust the failure to complete the contract showing the terms agreed upon at the time the land was purchased will not defeat the trust.

The trial court properly advised the jury that, in ascertaining whether the land was purchased by Piper as trustee for the others or solely upon his own account, they might "take into consideration any writing that may have been drawn up at the time, the conversations of the parties, their acts, conduct, and all the circumstances, in connection with the matter." The exclusion of testimony which came within this rule requires a reversal of the judgment and the remanding of the case for another trial.