No. 27,005.

ESTHER HURT, *Appellant*, v. (EDWIN S. DREW) C. E. DREW, Interpleader, *Appellee.*

SYLLABUS BY THE COURT.

1. FRAUDS, STATUTE OF—*Creditor Cannot Invoke Statute—Parol Express Trust Concerning Realty.* Where a father by reason of a threat of a suit against him for breach of promise, which was never brought, conveys land to his son under an oral agreement that it is to be held for his benefit and reconveyed upon request, and the son recognizes the express trust so undertaken to be created by parol, a creditor of the son who has had an attachment levied on the land cannot avail himself of the statutory rule that an express trust concerning realty shall not be created by parol.

2. FRAUDULENT CONVEYANCES—*Imaginary Creditors—Title and Right to Property.* In the situation stated in the foregoing paragraph the conveyance by the father to the son is not to be regarded as made to hinder, delay or defraud creditors, so as to preclude his asserting title to the land as against a creditor of the son, in whose behalf an attachment had been levied on the land before any reconveyance had been made.

3. SAME—*Evidence—Mortgaging Property Conveyed.* In the situation above stated the fact of the son having borrowed money by mortgage on the land, the proceeds of which were used to pay his own debts, is held to be important only as bearing on the question of good faith, an issue settled by the decision of the trial court.

Appeal from Comanche district court; FRANCIS C. PRICE, judge *pro tem.* Opinion filed January 8, 1927. Affirmed.

*F. L. Slaughter, John A. Etling,* both of Kinsley, and *C. E. Baker,* of Coldwater, for the appellant.

*Jay T. Botts,* of Coldwater, for the appellee.

The opinion of the court was delivered by

MASON, J.: Esther Hurt brought this action against Edwin S. Drew, seeking a money judgment. She caused an attachment to be levied upon a 320-acre tract of land as his property. His father intervened, claiming to be the real owner of the land, although at the time of the attachment the paper title stood in the name of his son. The trial of this issue without a jury resulted in a judgment in favor of the interpleader, declaring him to be the owner of the land and the attachment to be without effect.

Findings made by the trial court showed these facts: In 1915 the

Attachment, 6 C. J. p. 202 n. 39. Fraudulent Conveyances, 27 C. J. pp. 471 n. 7, 868 n. 94. Frauds, Statute of, 27 C. J. p. 307 n. 72; L. R. A. 1916D 1213; 25 R. C. L. 736.

interpleader, who was then in Iowa, owned the land in question. He executed to his son without consideration therefor a deed, reserving a lease for his own life. He sent this to his son saying a woman in Iowa was wrongfully threatening him with a suit for breach of promise of marriage, and that he wished the son to receive the conveyance and reconvey the property when he asked for it. Later this was orally agreed to between the father and son. The deed had then been recorded. No suit for breach of promise was ever brought. The interpleader had no debts at the time except a $600 mortgage on one quarter section of the land. The attachment in question was levied upon the land as belonging to the son on September 26, 1924. On November 10, 1924, the son deeded the land to the interpleader, no earlier request for this having been made. For about five years after the making of the deed by the interpleader the son occupied the land and paid him rent. For the next five years the father either farmed it on his own account or rented it to tenants who paid him. In 1916 the son, without the knowledge of his father, mortgaged the land to a loan company for $2,000, which was used to pay off the $600 mortgage referred to and notes of the son on which the father was surety.

1. The plaintiff contends that the arrangement between the father and son by which the latter was to hold the title to the land for the benefit of the former was an attempt to create an express trust in realty by parol and was invalid because the statute provides that "no trust concerning lands except such as may arise by implication of law shall be created, unless in writing signed by the party creating the same, or by his attorney thereto lawfully authorized in writing." (R. S. 67-401.) This statute would be applicable and would invalidate the trust at the instance of the son if the action were one by the father to enforce it against him. But inasmuch as the son saw fit to recognize the oral trust as obligatory and perform its conditions there is nothing in the statute to prevent his doing so. And the plaintiff as an attaching creditor can reach only property of which her debtor is the actual and beneficial owner—not property to which he has only a naked legal title. (*Polley v. Johnson,* 52 Kan. 478, 35 Pac. 8; *Mallory v. Thomas,* 71 Kan. 562, 81 Pac. 194; see, also, 27 C. J. 307; 25 R. C. L. 736.)

2. As against a creditor of his own or as against his son the interpleader could not effectively assert title to the property if his conveyance to his son were made to hinder, delay or defraud creditors, or a creditor. Assuming the rule to be the same as between him and

a creditor of his son, it would not operate here because he had no creditors when he deeded the land to his son, and the fact that the deed was made because he was threatened with an unjust suit for breach of promise would not preclude his claiming the land.

"Where there are no actual creditors to be defrauded, and there is only a mental purpose to hinder imaginary creditors, equity will relieve against transfers of property without consideration." (*Hoff v. Hoff,* 106 Kan. 542, 549, 189 Pac. 613.)

3. The matter of the son having mortgaged the land and used the proceeds to pay his own debts, for which his father was merely a surety, is of importance only as it may bear upon the question of the good faith of the arrangement between him and his father. The trial court's decision is determinative of that issue.

The judgment is affirmed.