PUGH et al. v. COMMISSIONER OF IN-
TERNAL REVENUE. *
No. 5987.

Circuit Court of Appeals, Fifth Circuit.
April 20, 1931.

*Rehearing denied June 11, 1931.

Yandell Boatner, of Shreveport, La., and Rush L. Holland and George E. Strong, both of Washington, D. C., for petitioners.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau Internal Revenue and E. Riley Campbell, Sp. Atty. Bureau Internal Revenue, both of Washington, D. C. (Wm. Cutler Thompson, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

■ The petition seeks to review the redetermination by the Board of Tax Appeals of certain income taxes for the years 1920 and 1921. During 1919 a Louisiana plantation, controlled as community property by J. C. Pugh, was put under an oil lease, and oil was discovered. Several wells were brought in and operated during 1920 and 1921. Their operation during 1920 impregnated the land surface with oil and salt water, and made it unfit for cultivation, and permanently impaired the value of the plantation for agricultural purposes. The fair market value of the surface rights as distinguished from mineral rights was found by the Board to be reduced by $50,000 during 1920. This loss of value was claimed as a deductible loss, but the claim was denied by the Board. A deduction from gross income can be claimed only as authorized by the statute. The authority relied on is section 214(a) of the Revenue Act of 1918, 40 Stat. 1066: "That in computing net income there shall be allowed as deductions: * * * (4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business." The loss in value of the land for agricultural purposes was evidently incurred by its use in the business of oil production, but it was not sustained during the taxable year within the meaning of the statute. There has been no sale, which is ordinarily necessary to define and realize a loss arising from a fluctuation of value. The land has simply been turned from its former agricultural use to another use which it was believed would be more profitable. The injury to its agricultural value was a probable if not inevitable result, and was expected to be offset, and was no doubt much more than offset, by the increase in its mineral value. There was no physical destruction of a house or an orchard or a vineyard or other addition to the land of whose cost there could be a definite measure, and about whose disappearance there could be no doubt. There is only an attempted mental subdivision of elements of value in the land, and an estimated depreciation in one element without any actual sale or other conversion by the owner, either of that element or of the land as a whole. A loss is not sustained during the taxable year within the meaning of the statute unless ascertained and realized more definitely than by an opinion of changed market value.

■ The oil lease is not in the record, but it appears to be the ordinary arrangement

to last so long as oil is produced in paying quantities, with a reserved royalty of one-eighth of the oil produced. Under the laws of Louisiana oil or gas in the ground is not capable of ownership separate from the land in which it is found; but the right to have a part of that produced, whether the right resides in a so-called lessee or in the lessor as a royalty, is an interest in the land which can be fully conveyed by its owner in whole or in part. Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207; United States v. Looney (C. C. A.) 29 F.(2d) 884. The taxpayer, J. C. Pugh, on August 1, 1919, conveyed a half interest in his royalty right upon terms hereafter stated, under which he claimed to be entitled to a depletion allowance for the years 1920 and 1921, on account of the oil taken out, not only in respect of the half of the royalty right which he did not convey, but also the half that he did convey. The denial of this claim presents the next question. The allowance for depletion, like that for exhaustion, represents an effort to recognize year by year gradual losses of capital whose aggregate will be definitely and certainly ascertained only at a later date. In the case of exhaustion the loss is due to aging, to wear, to deterioration by natural causes, and the like. In the case of depletion, there is an actual severance and disposal of part of the capital. In allowing for each there is the effort to deduct from apparent income what is really a loss or a conversion of capital. Both thus relate to the capital which is actually shrinking at the time of the allowance, and the allowance ought to go to the then owner of that capital. Accordingly, in Lynch v. Allworth-Stephens Co., 267 U. S. 364, 45 S. Ct. 274, 69 L. Ed. 660, depletion was held allowable on the interest of both lessor and lessee, since each was suffering a loss; but in Weiss v. Weiner, 279 U. S. 333, 49 S. Ct. 337, 73 L. Ed. 720, a lessee without investment and suffering no actual loss was denied exhaustion. The question here is whose was the ownership in 1920 and 1921 of the transferred half of the royalty, and that depends upon the legal effect of the instrument which conveyed it. Omitting formal and descriptive parts, and italicizing significant words, the language is: "J. C. Pugh *has this day sold* to J. M. Eastham * * * one-half of his one-eighth royalty on the following described property. * * * This *sale* and *transfer* is made for the *price* and sum of $250,000.00; $50,000.00 of which is paid in cash and the balance of $200,000.00 *to be paid out of* the one-half royalty herein conveyed to the said Eastham, the said Pugh to *receive* the entire royalty of one-eighth until the said unpaid balance of $200,000.00 has been paid out of the said half *belonging to said Eastham,* and thereafter the said one-half shall be paid to the said J. M. Eastham or his assigns. It is further agreed and understood that the said J. M. Eastham in no way binds or obligates himself personally to pay the said balance of $200,000.00, and if one-half of the royalty from the said property is not *sufficient to pay* said sum, then the vendor in no way looks to the said Eastham personally for the payment thereof. *The sale to be operative from the first day of August, 1919,* and all oil in tanks *now* on hand shall go exclusively to said Pugh." The instrument is dated August 1, 1919, attested as a deed, and filed and recorded as such. We construe this to be a conveyance, operative from its date, of a half interest in the royalty right for a total consideration of $250,000, $50,000 being paid in cash, and a special arrangement being made for the payment of the remainder. The arrangement did not involve Eastham in personal liability, but appropriated the proceeds of his royalty oil to the payment until the $200,000 should be paid. It is specially referred to as the half *belonging to said Eastham.* As the oil was produced, that due to this half of the royalty right was Eastham's oil. The risk of market price was his. When the proceeds were paid over to Pugh they were paid, not because the oil was Pugh's but because it was pledged to Pugh. The money went to discharge the price due on Eastham's purchase, and to pay for the right which he had bought "operative from August 1st, 1919." After that date it was Eastham's royalty right that was being depleted by the removal of oil, and he, and not Pugh, was entitled to the depletion allowance, although Pugh was to get and did get the proceeds of the oil when sold. The same principle was applied in Waller v. Commissioner (C. C. A.) 40 F.(2d) 892, and Herold v. Commissioner (C. C. A.) 42 F.(2d) 942, in which a lease interest was transferred instead of a royalty. Our decision in United States v. Looney, 29 F.(2d) 884, is cited as to the contrary, but that case did not directly involve any question of depletion. The question was to whom certain royalties belonged as income. Nor did it really involve any sale of a royalty, for the parties were claiming under adverse titles, and made a compromise agreement.

which effected a division of the disputed royalty.

Parol evidence was offered before the Board from the scrivener and the parties to the above conveyance to show that it was explicitly agreed among them that the depletion allowance on the oil necessary to pay the $200,000 should go to Pugh, and that Eastham had not claimed it in his tax return. The objection that parol evidence was inadmissible to add to or vary the writing both under general law and under article 2276 of the Civil Code of Louisiana was met with the statement that it was offered, "not for the purpose of changing the terms of the written agreement, but for the purpose of explaining the meaning and intention of the parties, and to clarify the agreement expressed in the contract." The parties are thus presented as content with the terms of their conveyance, claiming no mistake or error or omission in them, and certainly seeking no reformation. The proposal is to give this recorded instrument an effect according to the wish of the parties rather than that attributable to it by law, and thus to control as against the United States the application of the tax laws. While it is sometimes broadly stated that the parol evidence rule has no application to any save parties to the instrument and their privies, In re Shields Brothers, 134 Iowa, 559, 111 N. W. 963, 10 L. R. A. (N. S.) 1061; O'Shea v. N. Y. R. R. Co. (C. C. A.) 105 F. 559; Blake v. Hall, 19 La. Ann. 49, yet when an instrument is executed as the final embodiment of an agreement, and becomes the act of the parties, and where the parol evidence is offered merely to vary the legal effect of its terms, the rule operates to protect all whose rights depend upon the instrument though not parties to it. Allen v. Ruland, 79 Conn. 405, 65 A. 138, 118 Am. St. Rep. 146, 8 Ann. Cas. and note, page 347; 10 R. C. L. § 213; 5 Wigmore on Evidence, §§ 2425, 2446; 2 Williston on Contracts, § 647. Especially are recorded muniments of title not to be altered by parol evidence except on orderly procedure for their reformation. Blum v. Allen, 145 La. 71, 81 So. 760. That by some other form of instrument the rights of the United States would have been different is beside the question. The parties abide by this instrument as they made it. The law, and not their wish or understanding, must control its legal effect on the incidence of taxation. The Board did not err in disregarding the parol evidence.

Petition denied.