COALINGA-MOHAWK OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14974. Promulgated January 20, 1932.

*J. Gilmer Korner, Esq., Joseph C. Myerstein, Esq.,* and *W. S. Renz, Esq.,* for the petitioner.

*Henry A. Cox, Esq.,* for the respondent.

OPINION.

TRAMMELL: The sole question here is whether or not the ascertainment in 1921 that land purchased as oil-bearing land in 1918 for $80,000 was not oil-bearing property and thus worth only $2,000 represents a *sustained* loss of $78,000 deductible from 1921 income.

The respondent admits that during the taxable year the land was determined to contain no oil and was worth only $2,000, but contends that no deductible loss was sustained or realized in 1921, because throughout that year the petitioner continued to own or hold the legal title to the land and to derive income therefrom. The petitioner contends that its loss was fully sustained or realized in 1921, during which year (1) it determined that the land contained no oil, (2) abandoned or discarded the land from use in its business, and (3) reduced the value of the land on its books from $80,000 to $2,000, thus eliminating the value of the land in excess of $2,000 from its assets account.

In our opinion, the petitioner has not sustained a deductible loss in 1921. It purchased land for $80,000 and continued to hold the land throughout the taxable year. The fact that it had become reduced in value does not entitle the petitioner to a deduction. The petitioner did not acquire the land and the right to explore for oil separately, but merely purchased the land. It is not necessary to discuss a situation which might have been presented if the petitioner had purchased the land for a certain price and the oil rights separately. It is a well recognized principle that depreciation in the value of property does not give rise to a deductible loss. Any reduction in value of the property can not be taken as a deduction until the loss is realized by a closed transaction. It may well

be that deeper drilling may have disclosed oil, or other minerals may have been found. Other events might have occurred which might have shown that the land was worth more than the purchase price, or at least not less.

In the case of *Fred C. Champlin*, 1 B. T. A. 1255, we considered a case presenting this same question. There we said:

Counsel for the Commissioner admitted the facts alleged in the petition and agreed that said facts may be considered as proven. Said petition, in substance, alleges that in April, 1918, the taxpayer purchased the fee simple title to eighty acres of land in Oklahoma and paid therefor the sum of $8,500, and that he made said investment on the belief that said land would produce oil. Soon after said purchase, test wells were drilled on adjacent tracts of land and all of said test wells proved nonproductive of oil, which result destroyed the value of taxpayer's land for oil purposes. The value of the tract for farm purposes was only $2,500. The taxpayer had not sold or otherwise disposed of his fee simple title to the land in 1920.

There being no closed transaction to establish loss to the taxpayer, the determination of the Commissioner is approved.

See also *A. J. Schwarzler Co.*, 3 B. T. A. 535, and *Consolidated Brick Co.*, 17 B. T. A. 831.

It may well be that a taxpayer might purchase land which he considered suitable for the growing of a certain kind of crop and later discover that it was not suitable for that particular kind of crop, and that for other crops the land had less value, but we do not consider that this is such a transaction as gives rise to a deductible loss.

We do not consider that the cases relied upon by the petitioner, *United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398; *Lewellyn* v. *Electric Reduction Co.*, 275 U. S. 243; and *Niagara Falls Brewing Co.*, 281 U. S. 712, are applicable to this case. The case of a brewing company which acquired and used buildings for the purpose of its business and later, on account of prohibition legislation, found that it could no longer use them in that business, has no application to a case where a person purchases land for one purpose and finds that he can not use it for the particular purpose acquired and that it has less value than was originally put upon it or was contemplated. In this case the land was purchased as unproven oil property. The taxpayer took the chance of finding oil. It could not be said that it was used in the business in order to make applicable the analogy between this case and the obsolescence cases of brewery property decided by the Supreme Court. The usefulness in the business was not terminated. If the property had no oil, it was never at any time useful in the oil business. The property was merely a potential oil reserve. The petitioner was in the "oil production business." It does not follow that a tract of land which was bought in the expectation that future

developments might disclose that it contained oil was actually being used in that business. It would doubtless have been used in the business if it had contained oil. This is a case where future events showed that the property could never be used in the business, rather than that it being so used was abandoned in that business.

There was here no unforeseen cause by reason of which any property was discarded. Nor do we think this case is similar to those cases in which leases, after discovery that no oil was obtainable, were abandoned and given up.

We are of the opinion that the position of the respondent is correct.

*Judgment will be entered for the respondent.*