## COMMISSIONER OF INTERNAL REVENUE v. MOLTER.

No. 569.

Circuit Court of Appeals, Tenth Circuit.

Aug. 24, 1932.

Helen R. Carloss, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., Sewall Key, Sp. Asst. to Atty. Gen., and F. L. Van Haaften, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., on the brief), for petitioner.

Mark H. Adams, of Wichita, Kan. (W. E. Holmes and Howard L. Baker, both of Wichita, Kan., on the brief), for respondent.

Before LEWIS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

McDERMOTT, Circuit Judge.

Mrs. Molter claimed a credit for depletion of oil reserves in her income tax returns for 1922 and 1923, under section 214 (a) (10) of the Revenue Act of 1921 (42 Stat. 227, 239). The Commissioner disallowed the credit on

the ground that she owned no interest in the oil depleted. The Board of Tax Appeals upheld Mrs. Molter's contention and the Commissioner appeals.

■ Depletion allowances are not confined to the owner of the fee; they are to be made to those who have a property right or interest in the substance depleted. Weiss v. Weiner, 279 U. S. 333, 49 S. Ct. 337, 73 L. Ed. 720; Lynch v. Alworth-Stephens Co., 267 U. S. 364, 45 S. Ct. 274, 69 L. Ed. 660; Pugh, v. Commissioner (C. C. A. 5) 49 F.(2d) 76, certiorari denied 284 U. S. 642, 52 S. Ct. 22, 76 L. Ed. ——. Mrs. Molter was paid one-half the reserved royalties under an assignment from her husband made on December 28, 1921. In Pugh v. Commissioner, supra, it was held that the assignee of one-half of a royalty was entitled to the depletion allowance, under the corresponding section of the act of 1918 (40 Stat. 1067). No reference to this point is made in the briefs herein, or in the opinion of the Board of Tax Appeals; so we pass on to the question mooted: Did Mrs. Molter have an interest in the farm from which the oil was produced? The title stood in the name of her husband, although both supposed it was in their joint names until the discovery of oil disclosed otherwise, at which time the assignment of royalties was made to enable Mrs. Molter to get her share of the oil.

The Board of Tax Appeals found, upon sufficient evidence, that prior to her marriage in 1897, respondent was a school teacher, and had accumulated some money and property. Mr. Molter had less than $100 in cash, and a horse and wagon. Upon their marriage, they rented a farm, purchasing the necessary equipment out of their pooled resources. The profits went into a bank account in the husband's name, but subject to the check of either. In 1904, they decided to and did purchase a farm in Illinois for $9,000 of which $3,500 was paid in cash, the balance on a mortgage. The cash payment was made partly from their savings, and the rest was borrowed by respondent and her husband from a bank. There was an understanding between them that they were joint owners of the farm so purchased. The respondent testified: "Our agreements were always 'we' and not 'I'; always as a company." Her husband corroborated her testimony. Later, respondent received $2,000 from her father's estate, which was applied to reduce their indebtedness on the farm and to make improvements on it.

In 1909 respondent and her husband came to Kansas to look at farms, and in 1910 acquired the farm from which the oil in question was produced. They traded their Illinois farm, subject to a $5,000 mortgage, for the Kansas farm, subject to a $6,000 mortgage; respondent and her husband both signed, as principals, the $6,000 note and mortgage. Counsel for Commissioner suggests there was no intention that respondent should pay this note. Her intention is immaterial; she was legally liable for the full amount thereof. This obligation was paid from revenues of the farm.

■ The Board of Tax Appeals found that, "There had always been an understanding between petitioner and her husband that the Illinois farm and the Kansas farm were owned by them jointly." It is contended that the evidence discloses no agreement to that effect. While there was no written nor formal oral agreement, we are satisfied the finding is supported by the evidence. Without reviewing it in detail, it appears that husband and wife, from the outset, carried on as the respondent expressed it, "always as a company." They pooled their slender resources and their larger liabilities. Respondent contributed, from her own earnings, as much or more to the venture at the time of their marriage, as her husband. She did her full share of the work. The only new money that came into their "company" came from her inheritance. The bank account was subject to the check of either. Every liability assumed for borrowed money was the obligation of both. Their intention, understanding, and informal agreement was that each should have an equal interest in property acquired by them. Both believed that title to both the farms stood in their joint names.

■■ Whether respondent has an interest in the Kansas farm, is to be determined by Kansas law. Poe v. Seaborn, 282 U. S. 101, 110, 51 S. Ct. 58, 75 L. Ed. 239; Blythe v. Hinckley, 180 U. S. 333, 341, 21 S. Ct. 390, 45 L. Ed. 557; De Vaughn v. Hutchinson, 165 U. S. 566, 570, 17 S. Ct. 461, 41 L. Ed. 827. The Kansas farm was paid for by the transfer of an equity in the Illinois farm, into which had gone respondent's savings, her inheritance, and years of hard work and frugality; and by respondent and her husband assuming a liability of $6,000. At the time the Kansas farm was acquired, both intended to take the title jointly; in some way, it was in fact taken by the husband alone. Their relationship involved the highest confidence and trust.

Under the Kansas statutes and decisions, respondent has an enforceable equitable right

in this real estate. The Kansas courts would enforce this right even though the circumstances were such that, under Illinois law, she had no enforceable right as to the Illinois land. Howard v. Howard, 52 Kan. 469, 34 P. 1114. Section 67—401, R. S. Kansas 1923, provides: "No trust concerning lands except such as may arise by implication of law shall be created, unless in writing signed by the party creating the same, or by his attorney thereto lawfully authorized in writing."

■ There was thought to be some confusion in the earlier Kansas cases construing this section. Proceedings, Kansas State Bar Association, 1916, p. 69. The subject was cleared up in Silvers v. Howard, 106 Kan. 762, 190 P. 1, where Mr. Justice Burch analyzed the statute and reviewed the earlier decisions. There a son conveyed a farm to his mother, without consideration, for a particular purpose, and with the understanding that she would reconvey when the purpose was served. The trust, resting in parol, was declared and enforced. The law was held to be that where a transfer of title was induced by the confidential relations of the parties, parol evidence is competent to establish an implied trust. The confidential relationship is present in the case at bar; there was an agreement or understanding that title should be taken in the names of both respondent and her husband; such understanding can be proven by parol, or established by circumstances. In Taylor v. Walker, 114 Kan. 614, 617, 220 P. 518, 520, the court held: "Direct evidence of agreement to hold for the person paying the purchase money is not indispensable. The agreement and its terms may be inferred from the relations of the parties, their financial means, their conduct and admissions, and other pertinent circumstantial evidence." See, also, Lyons v. Berlau, 67 Kan. 426, 73 P. 52; Piper v. Piper, 78 Kan. 82, 95 P. 1051; Hurt v. Drew, 122 Kan. 357, 252 P. 249.

There is another statute which has application. Section 67—406, R. S. Kansas 1923, provides: "When a conveyance for a valuable consideration is made to one person and the consideration therefor paid by another, no use or trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two sections."

The rule is relaxed by section 67—408, R. S. Kansas 1923, as follows: "The provisions of the section next before the last shall not extend to cases where the alienee shall have taken an absolute conveyance in his own name without the consent of the person with whose money the consideration was paid; or where such alienee in violation of some trust shall have purchased the land with moneys not his own; or where it shall be made to appear that by agreement and without any fraudulent intent the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land or some interest therein in trust for the party paying the purchase money or some part thereof."

The respondent paid part of the consideration for the Kansas farm. She assumed a personal liability of $6,000; the balance of the purchase price was represented by the equity in the Illinois farm, into which had gone all her savings and her inheritance. She did not consent that the title should be taken in her husband's name alone. The decisions of the Kansas court applying this section are too numerous for discussion. A few will suffice.

In Howard v. Howard, 52 Kan. 469, 34 P. 1114, the wife conveyed Illinois real estate to her husband to manage for her. It was sold, and the proceeds went into a Kansas farm, title being taken by her husband. A trust in favor of the wife was impressed on the Kansas land. The court held that the question of whether a trust was created in the Illinois land was immaterial; that under the Kansas statute, a trust resulted as to the Kansas land. In Black v. Black, 64 Kan. 689, 68 P. 662, it appeared that a husband purchased a farm with the proceeds of his wife's inheritance, taking title in his own name. The court, speaking through Judge Pollock, held that the wife had an equitable interest in the land. In these cases, the wife contributed all of the consideration, and the trust was impressed on all the land. The statute contemplates the situation here presented of a partial contribution by the words "the land or some interest therein in trust for the party paying the purchase money or some part thereof."

Starbuck v. Kingore, 112 Kan. 102, 210 P. 930, 932, is a case where both husband and wife contributed to the original venture. There it appeared that the wife had $2,000 at the time of her marriage; it was used to buy equipment for a ranch; the arrangement was "that we would be partners in the ranch." A trust was impressed on a part of their acquisitions, the court saying: "To this testimony there should be added the evidence inherent in the fact that commencing in 1885 Yoxall had practically nothing and Mary had $2,000. In 22 years by their joint efforts they had accumulated 960 acres of deeded land and had railroad land contracts partially paid out for

960 acres more. That significant fact not only made it natural and probable but would justify an inference that part of this considerable estate equitably belonged to Mary, otherwise at the end of 22 years' labor she was worse off than when her married life with Yoxall began, while her husband had grown rich in the interval."

In Shields v. Johnson, 124 Kan. 155, 257 P. 926, 928, a father and daughter bought a home for the use of both, the title being taken in the daughter's name. The court said: "The manifest purpose was that each should share equally in buying a common home for both to be owned by both, and the title was placed in the name of the daughter at her request, for convenience, and nothing was said to the effect that the entire ownership of the property should be in her. Each paid one-half of the price for a common home, and it further appears that each contributed one-half of the cost of the furniture, fixtures, and household goods with which their joint home was equipped. The confidential relation between the father and daughter as well as the circumstances all tend to show that each owned one-half of the property. While the title was placed in the daughter, enough was shown to raise a trust by implication."

In Reemsnyder v. Reemsnyder, 75 Kan. 565, 89 P. 1014, two brothers bought a farm entirely on credit; it was paid for from the crops raised on it. The contract and deed were taken in the name of but one of them. A trust for a half-interest was impressed in favor of the other. In Rayl v. Rayl, 58 Kan. 585, 50 P. 501, a mother and son bought a tract of land, each paying part of the down payment, the balance being secured by a mortgage. The mother did the housework, and the son the farmwork. A trust was impressed for the benefit of the mother on half of the land. See, also, Barlow v. Barlow, 47 Kan. 676, 28 P. 607; Scholz v. Hoth, 94 Kan. 205, 146 P. 339; Stevens v. Hicks, 84 Kan. 351, 113 P. 1049; Franklin v. Colley, 10 Kan. 199.

The governing Kansas law is in accord with the law generally. Stickney v. Stickney, 131 U. S. 227, 238, 9 S. Ct. 677, 33 L. Ed. 136; Keaton v. Pipkins (C. C. A. 10) 43 F.(2d) 497. While we deem it unimportant as to whether the Illinois courts would have impressed a trust on the Illinois farm, if the oil in question had been discovered on that farm during the ownership of respondent and her husband, it is of interest to note that the Illinois Supreme Court has declared the law to be that: "So, also, where two or more persons together advance the purchase price, and the title is taken in the name of one of them, a trust will result in favor of the others, and all of them will take the title in equity in undivided shares in the property, proportioned to their respective shares of the purchase money furnished by them. A resulting trust, as the term implies, is not based upon agreement of the parties but is independent of any contract, and is raised by the law itself upon a particular established state of facts." Crawford v. Hurst, 299 Ill. 503, 132 N. E. 521, 523.

We are of the opinion that the ruling of the Board of Tax Appeals that respondent had an interest in the oil depleted is sustained by substantial evidence; its order is, therefore, affirmed.