Miners Broadcasting Service, Inc. v. Commissioner.
Miners Broadcasting Service, Inc. v. Commissioner
Docket No. 4724-62.
United States Tax Court
T.C. Memo 1964-266; 1964 Tax Ct. Memo LEXIS 72; 23 T.C.M. (CCH) 1618; T.C.M. (RIA) 64266; October 8, 1964
Joseph H. Jones and William D. Hutchinson, for the petitioner. Francis J. Cantrell, for the respondent. WITHEY
Memorandum Opinion WITHEY, Judge: The Commissioner has determined a deficiency of $2,220.34 in the income tax of the petitioner for 1957. The only issue for determination is the correctness of the respondent's action in disallowing a deduction of $7,010.55 taken by petitioner in its income tax return for 1960 as a loss on "transmitter land" in computing a net operating loss for that year of $8,492.14, a portion of which the petitioner carried back to its taxable year 1957. All of the facts have been stipulated and are found accordingly. The petitioner is a Pennsylvania corporation organized in June 1947 for the purpose of *73 communications - radio broadcasting - and during its taxable years 1957 through 1960 had its principal place of business in Lansford, Pennsylvania. The petitioner filed its Federal income tax return for 1960 with the district director in Scranton, Pennsylvania, and its return for 1957 with the district director in Philadelphia, Pennsylvania. The petitioner operates three duly licensed radio stations in Pennsylvania located as follows: one in Ambridge, which is in the western part of the Commonwealth, and one in Lansford and one in Pottsville, both of which are in the eastern section of the Commonwealth. On September 7, 1957, the officers of the petitioner were authorized to investigate the engineering feasibility of a radio station which would be located in the vicinity of Kingston, Pennsylvania, and which would operate on a frequency of 1150 kilocycles. In the event it was determined that the location of such a station was feasible, the officers were further authorized to take whatever steps were necessary to make application to the Federal Communications Commission, sometimes hereinafter referred to as the FCC, for a license to operate such station. The petitioner's officers *74 thereupon engaged the services of a firm of consulting radio engineers. The firm upon completion of a preliminary investigation discussed by telephone the results of their investigation with an officer of petitioner and later, on October 3, 1957, by written report, advised the officer that such a station was feasible and submitted topographic maps upon which it had indicated the boundaries within which it considered a site for the station should be located. On September 18, 1957, the owners of a certain tract of land situated in the Borough of Larksville, Luzerne County, Pennsylvania, executed an option agreement with the petitioner wherein petitioner obtained option rights to purchase a portion thereof amounting to 12.38 acres, sometimes hereinafter referred to as the transmitter land. In December 1957, the petitioner filed with FCC an application for a construction permit for a new standard broadcast station to operate in the Kingston, Pennsylvania, vicinity. In connection with the application and in support thereof, the petitioner attached thereto an exhibit, designated (e2), pertaining to antenna and site data. The petitioner recommended the transmitter land to the FCC as *75 the site of a proposed directional antenna system. In a decision by the FCC in a proceeding involving the foregoing application of the petitioner and the mutually exclusive application by Valley Broadcasting Company for a construction permit for a new standard broadcast station to operate on 1150 kilocycles at Leighton, Pennsylvania, the FCC, on July 27, 1960, granted the application of Valley Broadcasting Company and denied the application of the petitioner. The period during which the option, obtained by petitioner on September 18, 1957, to purchase the transmitter land could be exercised was extended by consent of all parties concerned to and including November 24, 1958. Pursuant to the option agreement the petitioner made option payments on the land as follows: 1957
November 8
$1,000
1958
March 21
1,000
June 20
1,000
September 30
1,500
November 20
2,309
$6,809
On November 24, 1958, the owners executed a deed conveying the transmitter land to the petitioner and, on November 25, 1958, the deed was duly recorded. The total cost basis of the transmitter land as shown on petitioner's books and records as of January 1, 1960, was $7,610.55. By a *76 journal entry made on its books as of December 31, 1960, the petitioner charged off $7,010.55 of the foregoing amount as loss on the land with the explanation that the entry was made to record loss on the land "when application for a Kingston radio station was denied." As a consequence of the chargeoff the land has since been carried on petitioner's books as an asset in the amount of $600. The above-mentioned amount of $7,010.55 charged off by petitioner on its books and records as a loss on the transmitter land was taken by petitioner as a deduction in its income tax return for 1960 with the following explanation: Land located in a wooded area west of Kingston, Pa. was purchased for $7610.55 in 1957 for a transmitter site for a proposed radio station at Kingston. This site was abandoned for radio use in 1960 when the proposal for the station was rejected by the Federal Communications Commission. The land was written down to a value of $50 per acre. In determining the amount of the petitioner's net operating loss carryback for 1960, the respondent disallowed the deduction of $7,010.55. During 1961 the petitioner's agent in Kingston, Pennsylvania, made considerable effort to *77 dispose of the transmitter land. He offered it for sale to the former owners at a price considerably in excess $100of per acre. He also attempted to sell it to others at a price of approximately $100 per acre. As of March 15, 1962, it appeared to him that no interested parties would pay $50 an acre for the land. For purposes of assessment of real estate tax, the transmitter land was valued by the local tax authorities at $10 per acre in 1958 and at the same amount in 1963. The following is a statement of the amount of real estate tax assessed on the land for the indicated years and, where paid, the dates of petitioner's payments thereof: Amount as-
Year
sessed
Date of payment
1960
$ 9.66
October 10, 1960
1961
9.32
October 31, 1961
1962
9.62
Not paid
1963
10.46
Not paid
The petitioner takes the position that it purchased the transmitter land solely for the purpose of erecting thereon a radio antenna to serve the Kingston, Pennsylvania, area and thus expand its broadcast facilities; that the land had no other value to it; that the denial by the FCC of its application for a construction permit was an occurrence which resulted in the sudden termination *78 of the usefulness of the land to it; that, accordingly, its effort to locate a station near Kingston was, of necessity, discontinued and the land discarded from use in its business; that the FCC's denial of its application for a construction permit was an identifiable event, wholly beyond its (petitioner's) control, which terminated the usefulness of the land in its business of radio broadcasting and resulted in it sustaining a loss of $7,010.55 on the land which was properly deductible in 1960 under section 165(a) of the Internal Revenue Code of 1954[1] and the pertinent provisions of the regulations, particularly section 1.165-2 (a). [2]
*79 Section 165(a) of the Code provides for the allowance as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 1.165-1(b) of the regulations provides that to be allowable as a deduction under section 165(a) of the Code a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and actually sustained during the taxable year and that only a bona fide loss is allowable. Section 1.165-2(a) of the regulations provides that a loss incurred in business or in a transaction entered into for profit and arising from the sudden termination of the usefulness of such business or transaction of any nondepreciable property, in a case where such business or transaction is discontinued or where such property is permanently discarded from use therein, shall be allowed as a deduction under section 165(a) of the Code for the taxable year in which the loss is actually sustained and that for the foregoing purpose the taxable year in which the loss is sustained is not necessarily the taxable year in which the overt act of abandonment, or the loss of title to the property, occurs. The parties are in agreement *80 that a loss, to be allowable as a deduction under section 165(a) of the Code, must be evidenced by a closed and completed transaction, fixed by identifiable events, and actually sustained during the taxable year. However, they are in disagreement as to whether the record here establishes a loss that is so allowable to petitioner. The petitioner, in 1958, purchased the transmitter land for use in its radio broadcasting business in the event the FCC granted its application for a construction permit. The petitioner's application for such permit was denied by the FCC on July 27, 1960. The petitioner thereafter throughout 1960 and to the time of the trial herein continued to own the land. There is no showing that either in 1960 or at any other time subsequent to petitioner's purchase thereof the land was destroyed or sustained any physical damage. The taxpayer in Fred C. Champlin, 1 B.T.A. 1255 (1925), in 1918, purchased 80 acres of land for $8,500 in the belief that the land would produce oil. Thereafter test wells were drilled on adjacent tracts of land and all of the wells proved nonproductive of oil, which result destroyed the value of the taxpayer's land for oil purposes. *81 The value of the taxpayer's land for farm purposes was $2,500. The taxpayer had not sold or otherwise disposed of the land at the close of 1920. In his income tax return for that year the taxpayer deducted $6,000 as a loss sustained on the land. In sustaining the respondent's disallowance of the deduction, it was held that there had been no closed transaction to establish loss to the taxpayer. In Coalinga-Mohawk Oil Co. v. Commissioner, 64 F. 2d 262 (C.A. 9, 1933), certiorari denied 290 U.S. 637 (1933), affirming 25 B.T.A. 261 (1932), the taxpayer, which was engaged in the business of producing and selling oil, in 1918 purchased for $80,000, 200 acres of land which at that time it regarded as semi-proven oil land because of the latter's proximity to a proven oil field. The land was purchased by the taxpayer solely as an oil prospect or because of its supposed oil content. At the time of purchase the taxpayer did not contemplate immediate drilling but contemplated drilling when the proven area approached its land. In 1921 the taxpayer determined that its land was nonoil-bearing and offered it for sale at $10 an acre or $2,000 for the tract, which *82 was its value as grazing land, exclusive of any value as an oil prospect. Having been unable to sell the land at the foregoing price the taxpayer at the beginning of 1922 leased it at an annual rental of 15 cents per acre or $30 for the tract and, in 1923, sold the land for $2,000 representing its book value. Thereafter, and until in 1928, the land changed ownership twice and each time at a price of $2,000 for the tract. In its income tax return for 1921 the petitioner deducted as a loss on the land the amount of $78,000 representing the difference between the cost of the land of $80,000 and $2,000, the amount at which it offered the land for sale in 1921. The respondent disallowed the deduction. The respondent's disallowance was sustained on the ground that there was no completed transaction giving rise to a sustained and deductible loss by the taxpayer until in 1923 when it sold the land. In Pugh v. Commissioner, 49 F. 2d 76 (C.A. 5, 1931), certiorari denied 284 U.S. 642 (1931), affirming 17 B.T.A. 429 (1929), the owner of a plantation, then and theretofore used by him for agricultural purposes, put it under an oil lease in 1919 and oil was *83 discovered. Several oil wells were brought in and operated during 1920 and 1921. Their operation during 1920 impregnated the land surface with oil and water and made it unfit for cultivation and permanently impaired the plantation for agricultural purposes. The fair market value of the surface rights, as distinguished from the mineral rights, was reduced in 1920. Deduction was taken by the taxpayer in his income tax return for 1920 for such reduction in value but the deduction was disallowed by the respondent. In sustaining the respondent's disallowance of the deduction, the Court pointed out that the land had merely been turned from its former agricultural use to its use in the business of oil production which it was believed would be more profitable and that while the loss in value of the land for agricultural purposes was incurred in the business of oil production, it was not sustained during the taxable year within the meaning of the taxing statute, stating: There is only an attempted mental subdivision of elements of value in the land, and an estimated depreciation in one element without any actual sale or other conversion by the owner, either of that element or of the land *84 as a whole. A loss is not sustained during the taxable year within the meaning of the statute unless ascertained and realized more definitely than by an opinion of changed market value. The taxpayer in Denise Coal Company v. Commissioner, 271 F. 2d 930 (C.A. 3, 1959), affirming 29 T.C. 528 (1957) on this point, owned or was lessee of certain coal land, some of which was strip mined during the taxable years 1946 through 1948. In that operation, piles of deposit were placed on adjacent land of the taxpayer. As a result some of the soil of the adjacent land became permeated with acid which came from water on the slag thrown up in the coal mining operations. Rehabilitation of the adjacent land by removal therefrom of the piles of deposit was too expensive to be practicable. The taxpayer took a loss deduction with respect to such land and contended that, as a consequence of the foregoing, the land had "become nearly or entirely worthless." Even though such land was no longer fit for the use for which it was acquired by the taxpayer, the latter had not abandoned it but continued to hold it and do nothing about it except claim the loss there in issue. The Court *85 held that that was not enough and that the taxpayer was not entitled to any loss deduction with respect to such land until it "disposes of the property by sale, abandonment, tax sale by public authorities or some other way. [n6] [Footnote omitted.]" In its footnote 6, the Court pointed out some situations where property becomes wholly valueless in the hands of the owner and he is permitted to claim a loss for tax purposes in that year and stated that - Denise would like to take advantage of this rule, but carefully does not make its claim broad enough to come within it. It says that the property became worthless for the purpose for which it was acquired, not that it became worthless altogether. This is not enough. There is nothing in the record to indicate that from the disallowance on July 27, 1960, of its application for a construction permit and thereafter throughout the remainder of 1960 the petitioner did anything about the transmitter land except make payment on October 10, 1960, of the real property tax thereon for 1960 and continue to hold the land as before. The record shows that "as of December 31, 1960," apparently meaning on some date actually after December 31, 1960, $7,010.55 *86 of the cost of the land was charged off on petitioner's books as a loss on the land. However, such evidentiary effect for establishing a loss as the chargeoff may have, is completely negatived by petitioner's payment on October 31, 1961, of the real property taxes on the land for 1961 and the petitioner's efforts through its agent to sell the land in 1961 for twice as much, or more, as the amount at which the land then was being carried on petitioner's books. To establish an abandonment of property, it is necessary that there be an intention to abandon and some act evidencing that intention, and the taxpayer must not only show the intention coupled with the act but must prove that the abandonment occurred in the taxable year for which the deduction is claimed. Dezendorf v. Commissioner, 312 F. 2d 95 (C.A. 5, 1963), affirming a Memorandum Opinion of this Court. In our opinion a similar showing is required as to discarding property where, as here, the taxpayer claims a deduction based on a discard of property. Such showing is lacking here. Since the record fails to show that the petitioner discarded or abandoned the transmitter land in 1960 and since under the holdings *87 in the Champlin, Coalinga-Mohawk, Pugh, and Denise cases, supra, there had been no closed and completed transaction in 1960 with respect to the land, we conclude that the petitioner was not entitled to the deduction in issue. The cases of Denman v. Brumback, 58 F. 2d 128 (C.A. 6, 1932); United States v. Hardy, 74 F. 2d 841 (C.A. 4, 1935); and Rhodes v. Commissioner, 100 F. 2d 966 (C.A. 6, 1939), relied on by petitioner are distinguishable on their facts from the present case. Decision will be entered for the respondent. Footnotes
1. SEC. 165. LOSSES. (a) General rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. ↩
2. INCOME TAX REGS. § 1.165-1 Losses. * * *
(b) Nature of loss allowable. To be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and actually sustained during the taxable year. Only a bona fide loss is allowable. Substance and not mere form shall govern in determining a deductible loss. * * * § 1.165-2 Obsolescence of nondepreciable property. (a) Allowance of deduction. A loss incurred in a business or in a transaction entered into for profit and arising from the sudden termination of the usefulness in such business or transaction of any nondepreciable property, in a case where such business or transaction is discontinued or where such property is permanently discarded from use therein, shall be allowed as a deduction under section 165(a)↩ for the taxable year in which the loss is actually sustained. For this purpose, the taxable year in which the loss is sustained is not necessarily the taxable year in which the overt act of abandonment, or the loss of title to the property, occurs.