KDI CORPORATION, Plaintiff-Appellant,

v.

FORMER SHAREHOLDERS OF
LABTRON OF AMERICA,
Defendants-Appellees.

No. 75–1716.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 17, 1975.

Decided June 24, 1976.

Robert O. Edington, Cincinnati, Ohio, Mark S. Lieberman, Chicago, Ill., Cors, Hair & Hartsock, Cincinnati, Ohio, for plaintiff-appellant.

John E. Cumming, Cumming, Bannister, Izenson & Kinney, Dayton, Ohio, for defendants-appellees.

Before EDWARDS and PECK, Circuit Judges, and McALLISTER, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

KDI Corporation, the debtor in a Chapter XI bankruptcy proceeding, perfected this appeal from a decision of the district court affirming a bankruptcy court decision. The bankruptcy judge had held that appellees were shareholders of the appellant corporation entitled to an additional 59,000 shares, rather than creditors falling within Class 6 of the plan of arrangement.

On December 18, 1968, KDI Corporation entered into a corporate acquisition contract, under which KDI acquired Labtron in exchange for $200,000.00 payable in shares of KDI issued to Labtron's shareholders. The number of KDI shares delivered was determined by a formula which provided for ascertaining the market value of KDI stock over a given period and dividing that value into $200,000.00. KDI also guaranteed that the number of shares so delivered would have an aggregate market value two years after the transfer date of at least $160,000.00. In the event of any deficiency, KDI agreed to issue more shares so that the aggregate market value would equal $160,-000.00. Pursuant to this guarantee agreement, as of the transfer date anniversary, December 20, 1970, the former shareholders of Labtron were entitled to approximately 59,000 shares. Stock certificates were not forthcoming, and on December 30, 1970, KDI filed a petition for an arrangement under Chapter XI of the Bankruptcy Act. A plan was confirmed which divided creditors into six classes. *In re KDI Corporation*, 477 F.2d 726 (6th Cir. 1973). Class 6 of this plan was composed of debts arising out of guaranteed value clauses similar or identical to the Labtron clause. There were 18 unsatisfied guaranteed value contracts outstanding at the time KDI's petition was filed, 16 of which matured after December 30, 1970, and two of which fell due prior to bankruptcy, including that of the Labtron shareholders. The beneficiaries of the two latter contracts challenged their classification as Class 6 creditors on the ground that they were shareholders of KDI and thus not affected by the plan. The bankruptcy court held that the maturity date of the Labtron clause, coming as it did about ten days prior to the petition of bankruptcy, was sufficient to remove appellees from the reach of the plan. The bankruptcy court explained that the only thing remaining to be done on December 20, 1970, was the issuance and delivery of stock certificates to the Labtron people, and that "the mere withholding of stock certificates should not vitiate the contract." On review, the district court affirmed on much the same reasoning.

Appellant premises its appeal upon two main arguments. First, appellant maintains that the bankruptcy judge and the district court misconstrued this court's holding in *In re KDI Corporation, supra*, which, it is argued, expressly found the guaranteed value clauses at issue to be debt-creating instruments. Appellant's second argument, raised for the first time before this court, is that the guaranteed value clause could not

have been "self-executing" as found by the district court, since there remained to be completed a condition precedent to delivery of the additional shares.

■ This latter argument rests upon a provision found in Section 6 of the acquisition agreement, which stated:

"Each and every obligation of KDI to be performed on the Transfer Date or thereafter, as the case may be, shall be subject to the satisfaction prior thereto of the following conditions, any one or more of which may be waived by KDI.

\* \* \* \* \* \*

"(i) *Investment Representation* —with respect to the delivery of the common stock of KDI provided for in Section 1 of this Agreement, Stockholders shall have delivered to KDI their covenants, in writing, to the effect that the common stock of KDI so received is and shall be acquired by Stockholders for investment and without any view to the distribution thereof in violation of the Securities Act of 1933, as amended, or the Rules and Regulations thereunder. . . ."

While appellant states that such an investment letter was not forthcoming, there is nothing in the record to support or refute this contention. However, whether such a letter was required prior to the original delivery of stock only, or prior to the original delivery and the delivery under the guaranteed value clause, and even assuming such a letter was never delivered, this provision was, according to its terms, subject to waiver by KDI and must be held to have been so waived. Shares of KDI common stock were delivered in satisfaction of the $200,000.00 purchase price. In addition, the opinion of the district court judge points out: "There is even a reference in KDI's own brief at page 11, that KDI had started to issue share certificates prior to its petition in bankruptcy" in compliance with the guaranteed value clause. Moreover, in the hearing before the bankruptcy

judge, in response to a requested stipulation by counsel for the Labtron people, KDI's counsel agreed that there were no disputes or open matters between the parties as of December 20, 1970.

■ Appellant's brief seems to maintain that an investment letter was mandatory under the Securities Act of 1933. Although it may be "prudent for the issuer . . . to request 'investment letters' from the buyers" in order to preserve the "private offering" exemption of § 4(1) of that Act, which requires that the buyer's intent is not to take for resale, the purchaser's intent is a question of fact, on which his own statement is evidentiary but not determinative. 1 Loss, Securities Regulation 665 (2d ed. 1961). In this case there was other evidence of purchaser's intent not to take for resale, including the fact that the stock to be issued to the Labtron people was to bear the legend:

"This certificate may be transferred only by (1) operation of law, (2) after registration, or (3) after issuance of written opinion by KDI Corporation Counsel that the shares may be transferred without registration."

■ Appellant's other contention that the guaranteed value clause created a debt rather than an equity interest was dealt with at great length by the bankruptcy court and the district court. The district court found that as of December 20, 1970, there was nothing remaining to be done by the parties except for the issuance of share certificates, and since the accepted rule * is that share certificates merely evidence ownership of shares and are not essential to ownership, the 59,000 shares could be considered constructively delivered. *Commissioner of Internal Revenue v. Landers,* 210 F.2d 188 (6th Cir. 1954); *Los Angeles Fisheries v. Crook,* 47 F.2d 1031 (9th Cir. 1931); 11 Fletcher, Cyclopedia of Corporations § 5094; 13 O.Jur.2d § 626. We agree with the district court's conclusion.

---

\* Section 11 of the corporate acquisition agreement reads:

"This Agreement may not be modified or terminated orally and shall be construed and

interpreted according to the law of the State of Ohio."

As of December 20, 1970, the former shareholders of Labtron embarked "upon the corporate venture, taking the risks of loss attendant upon it, so that [they might] enjoy the chances of profit." *United States v. Title Guarantee & Trust Co.,* 133 F.2d 990, 993 (6th Cir. 1943). Although the Labtron people were guaranteed stock with a value of $160,000.00 on that date, after that time they bore all the risks of loss attendant upon ownership of an equity interest, so that by December 30, 1970, the date KDI filed its petition in bankruptcy, appellees' shares could well have been worth far less than the $160,000.00 guaranteed value.

Additionally, in essence, the corporate acquisition agreement constituted a share subscription under which the Labtron shareholders had paid full consideration, which KDI had accepted and which under Ohio law conferred upon the Labtron people the status of shareholders. Ohio Rev. Code § 1701.01.

However, appellant argues, this court's previous decision in *In re KDI Corporation,* 477 F.2d 726 (6th Cir. 1973), is controlling insofar as it held similar and identical guaranteed value clauses to be debt-creating instruments. We concur with the district court's conclusion that this case is distinguishable from our prior holding in that the maturity date of this guaranteed value clause fell prior to the filing of appellant's petition in bankruptcy, a factual situation not before the court in the prior case. We also reject appellant's contention that its issuance of shares on December 20th would have constituted a voidable preference under bankruptcy law since such an action would only have affected equitable ownership of the corporation, would not have affected the assets of the corporation, nor worked to "enable [a] creditor to obtain a greater percentage of his debt than some other creditor of the same class." 11 U.S.C. § 96a(1) [Bankruptcy Act § 60a].

We conclude that appellees became shareholders of KDI Corporation to the extent of the 59,000 additional shares on December 20, 1970, the date they became entitled to receive those shares from KDI, and thus were not creditors falling within Class 6 of the plan of arrangement.

The decision of the district court is affirmed.