**KLINGLER ELECTRIC CORPORATION,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. J88–0462(W).

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 11, 1991.

Jack W. Brand, J. Allen Overby, John G. Gourlay, Jr., Gerald, Brand, Watters, Cox & Hemleben, Jackson, Miss., for plaintiff.

U.S. Attys. Office, Jackson, Miss., William D. Holmes, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

### INTRODUCTION

This case was heard before the court sitting without a jury on July 19, 1990. The plaintiff, Klingler Electric Company, filed the action against the defendant, the United States of America Internal Revenue Service. Klingler Electric Company (hereinafter referred to as "KEC") seeks a refund of federal income taxes and interest

for the taxable years ending October 31, 1981, and October 31, 1986, in the amount of $140,660.00, plus interest as provided by law. This court has jurisdiction of this case pursuant to 28 U.S.C. § 1346(a)(1).[1]

### CASE BACKGROUND

Originally, KEC was incorporated in the State of Mississippi under the name of K & C Corporation. The corporation had an authorized capital of $20,000.00 and the authority to issue 2,000 shares of common stock at a par value of $10.00 per share. The original shareholders were Anton Klingler and Asa K. Cobb. They each were issued 50% of the outstanding shares of common stock. On May 24, 1973, the corporation and its original shareholders (Klingler and Cobb) entered into an agreement with P.W. Burgemeestre. This employment agreement between KEC and Burgemeestre read that he would accept as "full compensation for the services as Manager the sum of Twenty-five thousand and 00/100 ($25,000.00) annual salary to be paid in twelve (12) monthly installments." This employment agreement also provided that Burgemeestre was to be elected to the Board of Directors of KEC as its Vice President and provided that Burgemeestre be issued 20% of the outstanding stock of the corporation. He was to receive an initial 4% at that present time, and later the remaining 16% was to be issued on an annual basis, starting from the year 1974 and continuing until 1979. Once the time period for stock issuance was satisfied, Burgemeestre became the unqualified owner of this stock. The issuance of the stock was not conditioned upon any further performance of services by Burgemeestre to the corporation.

The employment agreement of May 24, 1973, further provided that none of the shareholders could assign, mortgage, or

---

1. Title 28 U.S.C. § 1346(a)(1) provides as follows:

   **§ 1346. United States as defendant**
   (a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:
   (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

sell their shares of stock in the corporation without the consent of the other shareholders. If Burgemeestre withdrew from the corporation by termination, retirement, or death and wished to sell his shares, he or his estate was required to give the remaining two shareholders the right to buy his shares for an amount equal to the book valuation of the corporation by its certified accountant. The remaining shareholders (Klingler and Cobb) were afforded a 90–day right of refusal, which, if not exercised, triggered a second 90–day right of refusal by the corporation. If the corporation did not exercise its option, the shareholder who withdrew from the company was allowed to solicit a concrete offer from an outside party. If a concrete offer was made by an outside party, the corporation had an additional option of 15 days to purchase the stock in question, which, if not exercised, permitted Burgemeestre, the withdrawing shareholder, to sell his corporate shares to the party of his choosing.

On August 9, 1973, Klingler and Cobb executed an affidavit acknowledging that the corporation initially had the authority to issue 2,000 shares of common stock, but the pertinent stock certificates, stock certificate book, and the transfer ledger had been lost. They also executed an indemnity agreement for the protection of the corporation's shareholders with regard to any claim arising from the loss of the initial shares of stock. On this same date, there was a meeting of the shareholders and the board of directors of the corporation for the purpose of authorizing the issuance of shares of the corporation in lieu of the shares which are lost or destroyed.

On July 29, 1974, the corporation agreed to buy 800 shares (50%) of common stock owned by Cobb for $175,000.00 pursuant to the terms and conditions set forth in a written agreement on this date. Consequently, the corporation name changed from K & C Electric Co., Inc., to Klingler Electric Corporation. Only Klingler and Burgemeestre remained as shareholders. Klingler remained the President of the Board, and Burgemeestre had become its Vice President on August 2, 1973. A meeting of such shareholders and board of directors was held on October 14, 1974. Later, on December 11, 1974, Klingler and Burgemeestre entered into an agreement that recognized that the previous employment agreement (May 24, 1973) made Burgemeestre a shareholder in the corporation. Also, the agreement acknowledged that Klingler had an 80% interest with a total of 1,600 shares of corporate stock, and Burgemeestre had a 4% interest in the corporation with his 80 shares. In addition, this December 1974 agreement set out that Burgemeestre would be issued 53.33 shares of the corporation's stock in each of the years 1978 through 1982, making him the owner of $33\frac{1}{3}\%$ of the corporation common stock by the end of 1982.

Sam Schisler joined the corporation via an employment agreement dated April 18, 1975. Schisler, Klingler, and Burgemeestre entered into an agreement which provided that Schisler was hired as supervisor of all field work and coordinator of all outside construction jobs of the corporation for the salary of $25,000.00 per year. The agreement also stipulated that Schisler be issued 10% of the common stock of the corporation at the rate of 2% per year for a period of five (5) years. Thus, ownership of the total 10% would be achieved in the year 1990. Schisler was also required to extend the right of first refusal to the remaining shareholders (Klingler and Burgemeestre) and the second right of refusal to the corporation. If the rights were exercised by a corporate shareholder or the organization itself, Schisler was obliged to sell his shares at the book value, plus any additional earnings after the last audit. However, if the rights of first refusal were not exercised, Schisler could then sell his stock "to the party of his choosing." This agreement acknowledged that both Klingler and Burgemeestre were shareholders of the corporation. It further provided that by April 15, 1980, the common stock of the corporation would be distributed as follows: Klingler, 60% stock ownership; Burgemeestre, 30% stock ownership; and, Schisler, 10% stock ownership.

Later, on March 17, 1979, the same parties (Schisler, Klingler, and Burgemeestre) and their wives entered another agreement which contained substantially the same provisions as the April 18, 1975, agreement. The few provisions that differed in this agreement from the former one in 1975 were that (1) Schisler's salary was increased to $27,500.00 per year; (2) Schisler's stock ownership in the corporation on that date was verified to be 160 shares (an 8% interest); and (3) there was a provision providing that at the end of April 1980, Schisler's stock ownership would amount to 200 shares, or 10% of the outstanding stock of the corporation. Accordingly, when KEC filed its federal income tax return for the year of 1981, it listed the shareholders and their respectively-held shares as Klingler, owning 62%, Burgemeestre, owning 28%, and Schisler, owning 10% of the corporation's stock.

KEC purchased the 200 shares of its common stock owned by Schisler for $146,670.42. The money was given to Schisler in two payments of $73,335.21 on March 22, 1983, and July 1, 1984. The corporation claimed that the July payment was a deferred compensation deduction on the corporation's 1984 federal income tax return, resulting in a net operating loss, which was carried back to 1981. This deduction was disallowed by the United States Internal Revenue Service (hereinafter referred to as "IRS"). The corporation paid the deficiency created by the disallowance ($33,734.00) and its accrued interest ($1,746.00) which amounted to $35,480.00. However, a suit was filed by KEC seeking the refund of $35,480.00, plus the accrued interest.

On February 5, 1986, there was meeting held for the shareholders and board of directors of KEC. One of the subjects discussed at this meeting was the prospective purchase of all shares presently owned by Burgemeestre. It was noted that he had no objections to the sale of his shares back to the corporation. After this meeting, the corporation agreed in writing to buy all of Burgemeestre's outstanding interest and shares in the corporation for the purchase price of $488,304.00. KEC paid Burgemeestre $188,304.00 on February 19, 1986, and claimed such payment as a deferred compensation deduction by the corporation on its federal corporate income for 1986. This deduction was also disallowed by the IRS. As a result, KEC paid the deficiency of $94,864.00, along with the accrued interest of $10,316.00, for a total of $105,180.00. Another claim was filed by the corporation against the defendant, this time seeking the refund of $105,180.00, plus any interest accrued.

## CLAIMS OF THE PARTIES

The plaintiff-corporation, KEC, maintains that the employment agreements between Burgemeestre and Schisler (hereinafter sometimes referred to as "the relevant parties") were simply deferred compensation arrangements. Plaintiff contends that both Burgemeestre and Schisler understood that their percentages of KEC's net book value would be paid to them when they terminated employment, retired, or died, but that in the meantime these net book values were being deferred as an incentive for the relevant parties to maximize KEC's profits. The specified percentage of such expectancies, thirty percent (30%) for Burgemeestre and ten percent (10%) for Schisler, was annually used to approximate how much their interest would yield (at the end of a fiscal year) if they wanted to withdraw from the corporation at that time. And, on his initial 1986 federal income tax return, form 1040, Burgemeestre did report the $188,384.00 amount as deferred compensation. But later, pursuant to directions from certified public accountants, both Burgemeestre and Schisler reported the profits realized from the sale of KEC stock as capital assets gain on their personal federal income tax forms.

Plaintiff vigorously argues that notwithstanding the provisions in the aforesaid employment agreements concerning the issuance of its shares of stock to the relevant parties, it only intended to give the relevant parties a proprietary interest in the corporate assets. Each of the aforesaid employment agreements contained provi-

sions which stated that plaintiff would issue shares of corporate stock to the relevant parties over a period of years. KEC said that such issuance of stock was conditioned upon the continued loyalty of Burgemeestre (employed from 1973 to 1980) and Schisler (employed from 1975 to 1980). Thus, says KEC, neither Burgemeestre nor Schisler could have compelled any issuance of KEC stock since consideration of the stock was for future services. These agreements also contained anti-competition clauses and stock transfer restrictions barring the relevant parties from assigning, mortgaging, or selling such shares without the express consent of Klingler. KEC asserts that the clauses were restrictive, because pursuant to the first and second refusal, Burgemeestre and Schisler could sell their alleged shares to Klingler or back to the corporation at the book value of the shares as determined by a certified public accountant.

Plaintiff thus contends that no stock was ever issued to Burgemeestre or Schisler, or anyone on their behalf, or for their benefit, during their respective years of employment. In support of this contention KEC refers to its records which shows that Klingler, who is the president, the chief executive officer, and a member of the Board of Directors, has been the sole shareholder of the corporation since July 29, 1974. (This date signifies when Cobb sold his shares back to the corporation). Neither relevant party requested that KEC or Klingler issue any shares of stock, and plaintiff contends that it is uncertain any issuance would have been made pursuant to such a request. Also, the corporation never set aside any percentage of stock to be held in escrow. Because of the non-issuance of shares, KEC states that Burgemeestre and Schisler had no secured claim to the corporate stock and received absolutely no economic benefit. Until it made the cash payments which were paid and received by Burgemeestre and Schisler, KEC says it could not take deductions on its federal corporate income taxes for the interest the relevant parties held in the corporation. So, says the plaintiff, pursuant to 26 U.S.C. Internal Revenue Code (hereinafter referred to as "IRC") §§ 162(a) [2] and 404(a),[3] the money received by the relevant parties was properly deducted as business expenses of the corporation at the end the fiscal years of 1984 (which was carried back to 1981) and 1986.

An alternate position forwarded by plaintiff corporation is this: If the court deter-

---

**2.** Title 26 U.S.C. Internal Revenue Code § 162(a) provides as follows:

**§ 162. Trade or business expenses**

(a) *In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and

(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

**3.** Title 26 U.S.C. Internal Revenue Code § 404(a) provides as follows:

**§ 404. Deduction for contributions of an employer to an employees' trust or annuity plan and compensation under a deferred-payment plan**

(a) *General rule.*—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under this chapter; but, if they would otherwise be deductible, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:

\*   \*   \*   \*   \*   \*

(b) Method of contributions, etc., having the effect of a plan; certain deferred benefits.—

(1) Method of contribution, etc., having the effect of a plan.—If—

(A) there is no plan, but

(B) there is a method or arrangement of employer contributions or compensation which has the effect of a stock bonus, pension, profit-sharing, or annuity plan, or other plan deferring the receipt of compensation (including a plan described in paragraph (2)),

mines that such payments were deferred compensation, KEC would still be entitled to a deduction under IRC § 83.[4] This section provides that in the year such property vests in the employee, upon the transference of property from employer to employee, it is permissible for an employer to take a deduction for the value of the property. KEC says that there was no present transfer of property by it in connection with the performance of services to either of the relevant parties, prior to the 1984 and 1986 years.

On the other hand, the defendant contends that the IRS was correct to disallow the deductions of $73,335.21 (Schisler) and $188,304.00 (Burgemeestre), which were claimed by the plaintiff-corporation in 1984 and 1986, respectively. The IRS asserts that the payments in 1984 and 1986 were partial consideration for the purchase of the relevant parties' common stock in the

corporation, rather than the payment of deferred compensation, as claimed by KEC. Defendant points out that although the plaintiff introduced evidence through Klingler's testimony that the conduct of all parties reflected a desire to regard such payments as deferred compensation, the express language of the agreements between KEC and relevant parties provides that the money was paid to said parties to purchase their shares of the corporation's common stock.

The IRS further contends that the trial record establishes that the minutes of various corporate meetings refer to Burgemeestre as a shareholder. And, on its 1981 federal corporate income tax return, as well as other returns filed for subsequent taxable periods, KEC represented to the IRS that Burgemeestre was a shareholder. Defendant also contends that the record

---

Subsection (a) shall apply as if there were such a plan.

**4.** Section 83 of the Internal Revenue Code provides in part as follows:

**§ 83. Property transferred in connection with performance of services**

(a) General rule.—If, in connection with the performance of services, property is transferred to any person other than the person for whom such services are performed, the excess of—

(1) the fair market value of such property (determined without regard to any restriction other than a restriction which by its terms will never lapse) at the first time the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever occurs earlier, over

(2) the amount (if any) paid for such property,

shall be included in the gross income of the person who performed such services, in the first taxable year in which the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever is applicable. The preceding sentence shall not apply if such person sells or otherwise disposes of such property in an arm's length transaction before his rights in such property become transferable or not subject to a substantial risk of forfeiture.

(b) Election to include in gross income in year of transfer.—

(1) In general.—Any person who performs services in connection with which property is transferred to any person may elect to include in his gross income, for the taxable year in which such property is transferred, the excess of—

(A) the fair market value of such property at the time of transfer (determined without regard to any restriction other than a restriction which by its terms will never lapse), over

(B) the amount (if any) paid for such property.

If such election is made, subsection (a) shall not apply with respect to the transfer of such property, and if such property is subsequently forfeited, no deduction shall be allowed in respect of such forfeiture.

(2) Election.—An election under paragraph (1) with respect to any transfer of property shall be made in such manner as the Secretary prescribes and shall be made not later than 30 days after the date of such transfer. Such election may not be revoked except with the consent of the Secretary.

(c) Special rules.—For purposes of this section—

(1) Substantial risk of forfeiture.—The rights of a person in property are subject to a substantial risk of forfeiture if such person's rights to full enjoyment of such property are conditioned upon the future performance of substantial services by any individual.

(2) Transferability of property.—The rights of a person in property are transferable only if the rights in such property of any transferee are not subject to a substantial risk of forfeiture.

(3) Sales which may give rise to suit under section 16(b) of the Securities Exchange Act of 1934.—So long as the sale of property at a profit could subject a person to suit under section 16(b) of the Securities Exchange Act of 1934, such person's rights in such property are—

(A) subject to a substantial risk of forfeiture, and

(B) not transferable.

reflects that on February 19, 1986, the corporation agreed to purchase from Burgemeestre "all of his outstanding interest and shares in the corporation for the purchase price of $488,034," of which $188,-304.00 was paid to him on February 19, 1986. Likewise, the corporation listed Schisler on its 1981 federal income tax return as a shareholder. And his received payment of $73,335.21 on July 1, 1984, was partial consideration for the sell of his shares of common stock to the corporation by the end of 1980.

Defendant asserts that Burgemeestre and Schisler had acquired maximum ownership of the projected percentage of shares (as reflected in their agreements) by the end of 1982. The IRS responded to the plaintiff's assertion, that Burgemeestre and Schisler were not shareholders because they were issued no stock, by submitting authority which says stock ownership can be established through equitable interest. *KDI v. Former Shareholders of Labtron of America,* 536 F.2d 1146 (6th Cir.1976); *Dempsey Tegeler & Co. v. Otis Oil & Gas Corp.,* 293 F.Supp. 1383 (D. Colorado 1968). "The accepted rule is that share certificates merely evidence ownership of shares and are not essential to ownership, ... shares could be considered constructively delivered." (citations omitted) *KDI v. Former Shareholders of Labtron of America, supra,* at 1148. The defendant also refers to the explicit provisions in the employment agreements which supports the theory that the relevant parties were beneficial owners of a certain percentage of KEC's stock. Based upon principles of equity, the defense contends that Burgemeestre and Schisler could exercise their rights with respect to the stock certificates, despite the fact that the certificates were never issued to them. Also, the fact that the relevant parties were given a purchase price in accordance with the certain percentage of held stock is confirmation that the equitable ownership of such stock was never contested by KEC or its majority shareholder (Klingler).

POINTS OF LAW

The burden of proof rests with the plaintiff to show that it is entitled to a refund from the alleged overpayment of federal income taxes. *Compton v. United States,* 334 F.2d 212 (4th Cir.1964). "The ultimate question in a suit for refund is not whether the Government was wrong, but whether the plaintiff can establish that taxes were in fact overpaid." *Id.* at 216. The employment agreements were signed as final embodiments of law, thus these contracts are controlling for the purposes of determining the applicable federal tax consequences. *United States v. Ivey,* 414 F.2d 199, 203 (5th Cir.1969); *Pugh v. Commissioner of Internal Revenue,* 49 F.2d 76, 79 (5th Cir.1931). Also, there need not be any issuance of stock certificates to establish the existence of possession of stock shares where one has all the rights and responsibilities of ownership. *KDI v. Former Shareholders of Labtron of America,* 536 F.2d 1146 (6th Cir.1976) (when the only thing left to be done is the issuance and delivery of stock certificates, the mere withholding of the certificates does not affect the equitable ownership of the shares); *Dempsey Tegeler & Co. v. Otis Oil & Gas Corporation,* 293 F.Supp. 1383 (D. Colorado 1968) (a party may still be a bona fide purchaser of stock shares even though the certificates representing such shares were not validly issued). *Also see Gibson v. Manuel,* 534 So.2d 199 (Miss.1988), where the Mississippi State Supreme Court held that a party with a beneficial interest in the common stock of a corporation can enforce his rights in a court of equity.

*Section 83 of the Internal Revenue Code*

Section 83(a) applies to all property transferred in connection with the performance of services. Plaintiff alternatively contends that pursuant to § 83 of the Internal Revenue Code[5], the payments in issue are deductible under this provision[6] because the payments substantially vested in the relevant parties and because under

---

**5.** For text of § 83, see footnote 4.

**6.** At trial, plaintiff appeared to have abandoned this position.

§ 83 the employer may take a deduction. Defendant disagrees in but one sense; defendant says that the employer here under § 83, if entitled to a deduction, was entitled to one when the transfer occurred, which would have been in or before 1982.

■ Section 83 says that a payment is substantially vested in the employee if (1) the property is not subject to a substantial risk of forfeiture, or (2) the property is transferable. And, under IRC § 83(c)(1), the property is only subject to substantial risk of forfeiture if the employee's rights to the property are conditioned upon the future performance (or nonperformance) of substantial services by the individual to the employer. *Treasury Regulations* § 1.83–3(c). Treasury Regulations that interpret IRC § 83 must be sustained unless unreasonable and inconsistent with its language. *See Pledger v. Commissioner of Internal Revenue*, 641 F.2d 287 (5th Cir.1981). The fact that the shares of stock may experience a diminution in value is not within the § 83 contemplated risk of forfeiture which would preclude such stock from vesting in the owner. *Sakol v. Commissioner of Internal Revenue*, 574 F.2d 694, 700–01 (2d Cir.1978). Nor did the temporary restriction, that should Burgemeestre or Schisler wish to sell their shares of stock, the first offers must go to the remaining shareholders and corporation, entail substantial risk of forfeiture under § 83. *See id.* at 698–99.

■ According to the statutory provision which refers to an employee receiving stock in connection with performance of services, the excess of the stock's fair market value over its cost must be included in the employee's gross income as soon as it vests in his possession because that is when there is no longer a possibility of a substantial risk of forfeiture. 26 U.S.A. (I.R.C.1954) § 83(a). *See generally Sakol v. Commissioner*, 574 F.2d 694, at 699, *supra.* The defendant acknowledges that at the start of their employment Burgemeestre and Schisler had to continue working for KEC in order to earn shares of stock. But, says the defendant, once the shares were earned by the end of 1982, the relevant parties owned them without any further conditions attached. *See also Alves v. Commissioner of Internal Revenue*, 734 F.2d 478 (9th Cir.1984) (section 83 was deemed to apply even when the employee paid the amount equal to the stock's fair market value, without regard to the corporation's imposed restrictions upon the transfer).

## CONCLUSION

■ The court finds for the United States Internal Revenue Service. The defendant has established that the payments were made in satisfaction of the sale of corporate stock. Firstly, the provisions within the employment agreements expressly allot a certain percentage of shares over time to Burgemeestre and Schisler. Secondly, the corporation records of shareholders meetings identify the relevant parties as shareholders. Thirdly, the corporation federal income tax reports filed in 1981, and subsequently thereafter, list both as shareholders. And lastly, the purchase price of KEC common stock was derived exactly from the specified percentage of their owned shares.

The court notes that KEC corporation attempted to introduce evidence suggesting that Klingler believed the stock purchase payments to Burgemeestre and Schisler were deferred compensation, even though the express language of the agreements between the corporation and the relevant parties clearly provides that this money was paid to said parties to purchase their shares of the corporation's common stock. Regardless of the credibility of any such belief, such testimony contradicts the terms of the agreements with the corporation and cannot be considered to save the corporation from the express terms of the instruments themselves. *United States v. Ivey, supra,* 414 F.2d at 203; *Pugh v. Commissioner, supra,* 49 F.2d at 79. Said evidence by the plaintiff is neither convincing nor sufficient to win its case.

■ The IRS has satisfactorily established before this Court that it was not permissible for KEC to take tax deductions for its 1984 and 1986 stock purchase pay-

ments. After 1982 there was no forfeiture that could occur in which Burgemeestre or Schisler would lose their stock. Since the relevant parties could keep all previously issued shares of stock regardless of whether they continued to work for KEC, each could transfer his stock (subject to the rights of the first refusal by the other shareholders and the corporation), yet still remain an employee of the corporation. Conversely, they could have sold (transferred) their stock to (a) the other shareholders, (b) the corporation, or, (c) a third party. As such, all of the stock that had vested on or before 1982 in accordance with the provisions of the employment agreements should have been reported by the relevant parties as income in or prior to 1982, and these were the years in which the corporation would have been entitled to business expense deductions under § 83. The Court, therefore, concludes that KEC is not entitled to a federal tax refund with accrued interest for the taxable years ending October 1, 1981 (carried back from the 1984 year) and October 1, 1986.

Hence, the court finds for the defendant, the United States of America, and against the plaintiff, Klingler Electric Corporation. A separate judgment shall be entered in accordance with the local rules.

SO ORDERED AND ADJUDGED.